THE STATE OF OHIO, APPELLANT, *v.* HAIRSTON, APPELLEE.

[Cite as *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969.]

(No. 2002–1998—Submitted November 19, 2003—Decided March 17, 2004.)

O'DONNELL, J.

{¶ 1} In this appeal, we are asked to determine whether R.C. 2941.401 places a duty of reasonable diligence on the state to discover the whereabouts of an incarcerated defendant against whom charges are pending.

{¶ 2} Around 1:00 a.m. on September 27, 2000, two men, one of them holding a gun, burst through the back door of Ann and Mike's Bar, shouting at everyone to stay still. Richard Hairston, who had been seated at the bar, went behind the bar and into the kitchen.

{¶ 3} Meanwhile, the bartender opened the cash register and the two men grabbed money from there and from a tip jar and then went into the kitchen and demanded more money. The bartender testified that she had earlier removed excess cash from the cash register and had put it in a blue bag in the kitchen. When the robbers took her into the kitchen, she noticed that the blue bag was gone. At that point, the two men left the bar.

{¶ 4} The owner of the bar then locked the rear door while the bartender locked the front door and called the police. Hairston, who could not get out because the doors had been locked, ran into the men's restroom.

{¶ 5} Columbus police officer Dale Justice responded to the call, and the owner let him in and told him that one of the suspects was in the men's restroom. Hairston then came out of the restroom, and Justice ordered him to the floor, handcuffed him, and patted him down for weapons. The owner testified that as the officer lifted Hairston up, she noticed bundles of cash in Hairston's waistband, which Justice retrieved and the owner identified as money that had been taken from the blue bag. In addition, the blue bag was located hidden behind the tank

of the toilet in the men's restroom where Hairston had been hiding. Justice then arrested Hairston.

{¶ 6} The Franklin County Prosecuting Attorney proceeded by information charging Hairston with aggravated robbery, kidnapping, and two counts of robbery. However, on October 6, the prosecutor dismissed those charges, anticipating a possible indictment. On October 18, 2000, the grand jury returned indictments against Hairston on the same charges, and filed them on October 25, 2000.

{¶ 7} Because of the charges in the information, Hairston's parole officer held an on-site parole revocation hearing and revoked his parole on October 24. A summons, sent to Hairston's home on October 27 while he remained in the county jail, came back as unserved; thereafter, on October 31, 2000, Hairston was returned to the custody of the Ohio Department of Rehabilitation and Correction. When Hairston did not appear at his arraignment on November 5, the trial court issued a capias for his arrest.

{¶ 8} On June 12, 2001, the records supervisor at the Pickaway Correctional Institution delivered a detainer to Hairston advising him of the four charges from the October 2000 indictment. According to affidavits, Hairston believed that those charges had been dismissed, and he claims that he did not know that they had been refiled by indictment. He therefore filed a motion to dismiss, arguing that pursuant to R.C. 2941.401, the state had failed to exercise reasonable diligence to discover his whereabouts. The trial court denied his motion and, after a bench trial, found him guilty of all charges.

{¶ 9} The court of appeals reversed his convictions and remanded the matter with instructions to dismiss all charges against Hairston with prejudice.

{¶ 10} The cause is now before us pursuant to our acceptance of a discretionary appeal. We are called upon here to review the appellate court's decision and to determine whether R.C. 2941.401 places a duty of reasonable diligence on the state to discover the whereabouts of an incarcerated defendant against whom criminal charges are pending.

{¶ 11} "The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it." *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus. This court may engage in statutory interpretation when the statute under review is ambiguous. Id.

{¶ 12} "But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what

did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction." Id. at paragraph two of the syllabus.

{¶ 13} Therefore, the question for us to decide is whether R.C. 2941.401 is ambiguous. If it is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it. See Sears v. Weimer (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus ("An unambiguous statute is to be applied, not interpreted.").

{¶ 14} R.C. 2941.401 states:

{¶ 15} "When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter * * *.

{¶ 16} "* * *

{¶ 17} "The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

{¶ 18} "* * *

{¶ 19} "If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice."

{¶ 20} This statute is not ambiguous. Far from requiring the state to exercise reasonable diligence to locate an incarcerated defendant, R.C. 2941.401 places the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition; the statute imposes no duty on the state until such time as the incarcerated defendant provides the statutory notice. Further, a warden or prison superintendent has a duty to inform the incarcerated defendant of charges only when the warden or superintendent has knowledge of such charges.

{¶ 21} In applying the provisions of this statute to this case, as required by *Sears v. Weimer*, supra, we recognize that Hairston never caused the requisite notice of imprisonment and request for final disposition to be delivered to either the prosecuting attorney or the court; therefore, he never triggered the process to cause him to be brought to trial within 180 days of his notice and request. Further, the facts reveal that the warden had no knowledge of any of the charges pending against him.

{¶ 22} Hairston, however, seeks to have us read a duty of reasonable diligence into the statute; to accept his interpretation, "this court must read into the statute language that does not exist." *Middleburg Hts. v. Ohio Bd. of Bldg. Standards* (1992), 65 Ohio St.3d 510, 514, 605 N.E.2d 66. We decline to do so. Had the legislature wanted to impose such a duty on the state in similar cases, it could have done so. As our task is to apply unambiguous laws and not rewrite them, we decline to impose duties on prosecutors or courts not imposed by the legislature.

{¶ 23} Hairston next compares R.C. 2941.401 with R.C. 2963.30 through 2963.35, the Interstate Agreement on Detainers ("IAD"), which allows a defendant who is incarcerated in one state to notify other states that have charges pending against him of his whereabouts and to request those other states for final disposition. Hairston argues that a duty of reasonable diligence under the IAD would be onerous because multiple states are involved. He therefore rejects the state's reliance on cases interpreting the IAD. In contrast, he concludes that imposing a duty of reasonable diligence under R.C. 2941.401 on the state of Ohio as a collective entity is proper because only one state is involved.

{¶ 24} Hairston's argument is unpersuasive. Both statutes unambiguously impose the initial duty upon the defendant to trigger action on the part of the state.

{¶ 25} In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term. It does not, however, allow a defendant to avoid prosecution simply because the state failed to locate him. The facts here demonstrate that Hairston knew of his arrest, knew he had been apprehended in the bar, and knew that the police had removed from his waistband the money taken from the blue bag during the robbery. He also knew that the prosecutor had charged him by information; despite this, he waited until June 2001 to seek to enforce R.C. 2941.401.

{¶ 26} Accordingly, we hold that R.C. 2941.401 places a duty on an incarcerated defendant to "cause[ ] to be delivered to the prosecuting attorney and the appropriate court * * * written notice of the place of his imprisonment and a

request for a final disposition to be made of the matter[ ]" and that the duty to bring such a defendant to trial within 180 days of the written notice and request arises only after receipt of that statutory notice.

{¶ 27} We therefore reverse the judgment of the Tenth District Court of Appeals and remand the cause to that court for disposition of Hairston's remaining assignments of error.

Judgment reversed
and cause remanded.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, J., dissents and would affirm.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellant.

Donald C. Schumacher, for appellee.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Sherry F. McCreary, Assistant Prosecuting Attorney, urging reversal for amicus curiae Cuyahoga County Prosecuting Attorney.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Philip D. Bogdanoff, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.