DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, State of Ohio, appeals Defendant-Appellee's sentencing pursuant to her guilty plea in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On May 16, 2008, Sally Massien was indicted on two counts of theft of drugs, in violation of R.C. 2913.02(A)(1)/(2), felonies of the fourth degree. Massien was working as a nurse at Summa Health System at the time the offenses occurred. Massien plead not guilty to the charges and subsequently filed a motion for intervention in lieu of conviction ("ILC") pursuant to R.C. 2951.041 ("the intervention statute"). The court held a hearing on Massien's motion and ordered her to be evaluated for participation in ILC.
 {¶ 3} On July 10, 2008, the court held a sentencing hearing where it determined that Massien was eligible for ILC. Massien then retracted her initial plea and plead guilty to the charges pursuant to the provisions of the intervention statute. The court sentenced her to one *Page 2 
year of rehabilitation based on specific conditions. The State appealed and asserts one assignment of error for our review.
 II Assignment of Error Number One "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN GRANTING THE REQUEST OF SALLY A. MASSIEN FOR TREATMENT IN LIEU OF CONVICTION PURSUANT TO R.C. § 2951.041 SINCE SALLY A[.]MASSIEN HELD A POSITION OF TRUST AND THE OFFENSE RELATED TO THAT POSITION OF TRUST; ACCORDINGLY SHE COULD NOT BE SENTENCED PURSUANT TO R.C. § 2929.13(B)(2)(b)."
 {¶ 4} In its sole assignment of error, the State argues that a nurse who is convicted of a drug theft in the course of her employment is statutorily ineligible for treatment in lieu of conviction under R.C. 2951.041 because that provision applies only to offenders who could be sentenced to community control under R.C. 2929.13(B)(2)(b). The State asserts that the trial court erred when it failed to find that Massien held a "position of trust" under R.C. 2929.13(B)(1)(d), which would have made her ineligible for community control sanctions. Thus, the State argues that the trial court erred in sentencing Massien to ILC because she is a nurse who held a "position of trust" and is statutorily ineligible for ILC. Massien, in turn, argues that the phrase "position of trust" is meant to refer only to those occupying a public office or role in the public, and was not meant to extend to private individuals, too.
 {¶ 5} This Court applies a de novo standard of review to an appeal from a trial court's interpretation and application of a statute.Red Ferris Chevrolet, Inc. v. Aylsworth, 9th Dist. No. 07CA0072,2008-Ohio-4950, at ¶ 4. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." State v. Knoble, 9th Dist. No. 08CA009359, 2008-Ohio-5004, *Page 3 
at ¶ 12, quoting Hubbard v. Canton City School Bd. of Edn.,97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 14. "If it is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it." State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 13. In interpreting a statute, a court's paramount concern is legislative intent. State ex rel. United States Steel Corp. v. Zaleski,98 Ohio St.3d 395, 2003-Ohio-1630, at ¶ 12. To determine this intent, we read words and phrases in context and construe them in accordance with the rules of grammar and common usage. R.C. 1.42; Hedges v. Nationwide Mut.Ins. Co., 109 Ohio St.3d 70, 2006-Ohio-1926, at ¶ 24. Additionally, if a statute is ambiguous, the legislative intent may be reflected in the objective sought by the legislature, the circumstances of the statute's enactment, or the statute's legislative history. R.C. 1.49.
 {¶ 6} As a matter of first impression for this Court, it is essential to first understand the interplay between the relevant statutes at issue in order to properly analyze the State's alleged error. The intervention statute allows an offender facing criminal charges to request ILC if drug or alcohol usage was a factor leading to the criminal offense. R.C. 2951.041(A)(1). The court may reject the offender's request, but if the court elects to consider the request, it must then hold a hearing to determine if the offender is eligible for ILC. Id. The intervention statute also promulgates nine eligibility requirements that an offender must satisfy in order to receive ILC. R.C. 2951.041(B)(1) — (9). The State argues that Massien is statutorily ineligible for ILC because she fails to satisfy the following eligibility requirement set forth in the intervention statute:
 "The offender previously has not been convicted of or pleaded guilty to a felony, previously has not been through intervention in lieu of conviction under this section or any similar regimen, and is charged with a felony for which the court, upon conviction, would impose sentence under division (B)(2)(b) of section *Page 4 2929.13 of the Revised Code or with a misdemeanor." (Emphasis added.) R.C. 2951.041(B)(1).
 {¶ 7} Under R.C. 2929.13(B)(2)(b) ("the community control statute") the court is permitted to sentence an offender to community control "if the court does not make a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), (h), or (i) of this section." (Emphasis added.) Alternatively, if the court makes a finding as described in R.C. 2929.13(B)(1)(a) — (i) and "the offender is not amenable to an available community control sanction, the court shall impose a prison sentence on the offender." R.C. 2929.13(B)(2)(a).
 {¶ 8} The State argues that the court should have made a finding under R.C. 2929.13(B)(1)(d) that Massien "held a public office or position of trust and the offense related to that office or position" which would have then made her ineligible for sentencing under the community control statute and consequently ineligible for ILC. Massien in turn argues that the phrase "position of trust" was not intended to apply to private individuals, but was meant to address those offenders who hold a public office or are employed as a public servant. She further asserts that the legislature could have easily incorporated a phrase applying to those in a position of trust in the medical community or the private sector, but did not.
 {¶ 9} The State relies on two Tenth District cases, State v.Wiley, 10th Dist. Nos. 03AP-362 03AP-363, 2003-Ohio-6835, andState v. France, 10th Dist. No. 04AP-1124, 2006-Ohio-1204, in support for its argument that, as a nurse who stole drugs from her employer, Massien occupied a position of trust and that her position facilitated her crime and breached the hospital's trust in her.
 {¶ 10} In Wiley, the trial court denied the defendant's motion for ILC based on her "two previous failed attempts at treatment"; its belief that ILC would "demean the seriousness of the offense[s]"; and the "trust position [she] held as a nurse in our society." Wiley at ¶ 9. Wiley was *Page 5 
employed at a nursing home and admitted to stealing prescription drugs on over 31 occasions. Id. at ¶ 4. Wiley had a 20-year history of drug use, had altered physician prescriptions, and had been declared a drug dependent person based on her psychological evaluation. Id. Without much additional analysis, the Tenth District affirmed the trial court's determination that Wiley occupied a position of trust and consequently denied her motion for ILC.
 {¶ 11} When addressing this issue for a second time inFrance, the Tenth District further explained its rationale for finding that nurses hold a "position of trust" in society. In France, the defendant was a registered nurse who was charged with 52 counts of narcotics theft from her employer-hospital. Id. at ¶ 2. France committed those thefts by taking schedule II narcotics in the name of patients who had no outstanding prescriptions ordered and by taking drugs in excess of the amount prescribed to the patient, then utilizing the excess for herself. Id. The trial court had sentenced her to ILC, but the Tenth District reversed, based on its interpretation of the legislative history of the intervention statute and the facts of France's case. Id. at ¶ 11-12. It concluded that France's "professional position facilitated her crime and that the hospital's trust in her was breached." Id. at ¶ 11. The court further acknowledged that "this line of reasoning will inevitably make it difficult for health care professionals at all levels to benefit from intervention in narcotic-related crimes [and] [w]hether or not it is desirable, it is the logical result of the statute as written." The court noted that France "was entrusted with great discretion by her employer-hospital *** and her breach of that trust naturally entails serious consequences for subsequent orderly and lawful operation of the hospital's drug dispensing activities." France at ¶ 12.
 {¶ 12} Our research reveals that both the Seventh and Twelfth Districts have similarly held that both public and private individuals can occupy a "position of trust" under *Page 6 
R.C. 2929.13(B)(1)(d). See State v. Boland, 7th Dist. No. 00-CA-126, 2002-Ohio-1163, at ¶ 66-69 (comparing the phrase found in Ohio's felony sentencing guidelines to federal sentencing guidelines and concluding the statute applies equally to public and private individuals);State v. Bolin (Jan. 12, 1998), 12th Dist. No. CA97-06-056, at *2 (concluding that the statute applied to both public and private individuals based on the "or" found in the phrase "public office or position of trust" and noting that the word "public" does not modify the phrase "position of trust").
 {¶ 13} Other courts, however, have reached the opposite conclusion, thus limiting the scope of the phrase "position of trust" to generally include "public officials and public servants who abuse their positions of public trust." State v. Condon, 1st Dist. No. C-020262, 2003-Ohio-2335, at ¶ 104 (reaffirming the court's adherence to the conclusion that the language was generally not intended to include private individuals). See, also, State v. Brewer (Nov. 24, 2000), 1st Dist. No. C-000148, at *2 (reversing the court's prior position and concluding that the phrase "position of trust" was meant to primarily include those in government or with public standing only); State v.Jones, (Nov. 13, 1998), 2nd Dist. No. 98CA0009, at *2 (concluding the phrase applies only to public servants or public officials, not private persons employed by a private employer). Massien also directs us toState v. Cohen, 2nd Dist. No. 07-CA-081, 2008-Ohio-4635, at ¶ 5-16, where the Second District reasoned that, if an offender was charged with a felony offense for which the court could impose community control, the offender was likewise eligible for ILC, based on its interpretation of 2929.13.
 {¶ 14} Given the ambiguity abounding from the statute, we must analyze the legislative intent of the General Assembly when enacting the intervention statute, as well as its use of the phrase "position of trust" throughout the Revised Code. *Page 7 
 "Intervention provides an alternative to prison if the trial court has reason to believe that drug or alcohol usage by the offender was a factor leading to the offender's criminal behavior. Intervention reflects the legislature's determination that when drug abuse is the cause or precipitating factor in the commission of an offense, it may be more beneficial to the individual and to the community as a whole to treat the cause rather that punish the crime. If an offender satisfies all of the statutory eligibility requirements for intervention, the trial court has discretion to determine whether a particular offender is a good candidate for intervention." State v. Geraci, 2nd Dist. No. 04AP-26, 2004-Ohio-6128, at ¶ 5.
 {¶ 15} With that goal in mind, we now turn to the intended meaning behind the phrase "position of trust."
 {¶ 16} The First District remarked that "an overall reading of R.C. 2929.13(B)(1)(d) demonstrates that the [position of trust] factor refers only to `positions associated with government.'" Brewer, at *2 (quoting Griffin and Katz, Ohio Felony Sentencing Law (1999 Ed.), Sect. 6.14, 458). It further noted that "unrestrained application of the phrase to every breach of ethical, moral or filial duty by a private individual may distort the purpose of the new sentencing guidelines" and will result in far too broad an application of the phrase. Id. However, the First District refrained from adopting an absolute rule that a private individual could never hold a position of trust which warranted imposition of a prison sentence. Id. The Court later clarified that it could foresee the phrase applying to private professionals that are "traditionally thought to invoke a special relationship of trust" between the professional-offender and the victim. Condon at ¶ 104.
 {¶ 17} Were we to adopt the State's reasoning that nurses who steal drugs from their employer are categorically barred from being eligible for ILC, we would defeat both the intent of the intervention statute and goals underlying the use of the phrase "position of trust." That application is simply too broad and is not one this Court is willing to make. Therefore, we subscribe to the more reasoned approach espoused by the First District which recognizes that the *Page 8 
phrase was meant to apply predominantly to the offender's public standing, but does not foreclose the possibility that in limited circumstances, a private individual in a private setting may be found to have occupied a "position of trust."
 {¶ 18} Massien also directs us to the provisions governing disciplinary actions that the board of nursing may take against one of its members. There, the statute specifically states that "sanctions may be imposed for *** a judicial finding of eligibility for intervention in lieu of conviction for[] violating any municipal, state, county, or federal drug law[.]" R.C. 4723.28(B)(1)(5). In light of this provision, we are convinced that legislature intended ILC to apply to offender's just like Massien; that is, medical professionals who have ready access to drugs at their place of employment, who ultimately take and use those drugs, but who would benefit more from treatment for their offense, than being subject to criminal punishment for it.
 {¶ 19} Furthermore, it is illogical to think that the General Assembly intended that nurses be categorically ineligible for ILC because they hold a "position of trust" at their place of employment, yet simultaneously incorporate a provision that references their participation in ILC into the statute governing their licensure. Additionally, we note that the Revised Code is replete with references that contemplate licensed medical professionals receiving ILC, further supporting our belief that the legislature intended for such professionals, who commit criminal offenses against their employers, to, if appropriate, receive treatment, not punishment. See, e.g., R.C. 4715.30(F) (addressing the effect of ILC eligibility on dentists' and dental hygienists' licensing); R.C. 4730.25(B)/(C)/(H)/(I) (addressing the effect of ILC eligibility on physician assistants' licensing); R.C. 4731.22(B)/(C)/(E) (addressing the effect of ILC eligibility on physicians' licensing); R.C. 4734.31(C)/(F) (addressing the effect of ILC eligibility on chiropractors' licensing); R.C. 4760.13(B)/(C)/(H)/(I) (addressing the effect of ILC eligibility on *Page 9 
anesthesiologist assistants' licensing); R.C. 4761.09(A) (addressing the effect of ILC eligibility on respiratory care providers' licensing); R.C. 4762.13(B)/(E)/(H)/(I) (addressing the effect of ILC eligibility on acupuncturists' licensing). Thus, when read in the context with the rest of the Revised Code, we conclude that the legislature intended for nurses and other licensed medical professionals to be eligible for ILC. Accordingly, the State's assignment of error is not well taken because the trial court did not err in finding Massien eligible for ILC.
 III {¶ 20} The State's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 10 
Costs taxed to Appellant.
DICKINSON, P. J., CONCURS.