[Cite as *State v. Corn*, 2023-Ohio-1407.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 22 CA 004 |
| | : | |
| KYLE D. CORN | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Holmes County Court
                             of Common Pleas, Case No. 20CR043


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      April 28, 2023


APPEARANCES:

For Plaintiff-Appellant:                For Defendant-Appellee:

MATTHEW MUZIC                           DAVID M. HUNTER
HOLMES COUNTY PROSECUTOR                244 West Main Street
                                        Loudonville, OH 44842
ROBERT K. HENDRIX
164 E. Jackson Street
Millersburg, OH 44654

*Delaney, J.*

{¶1} Plaintiff-Appellant State of Ohio appeals the January 20, 2022 judgment entry of the Holmes County Court of Common Pleas. Defendant-Appellee is Kyle D. Corn.

## FACTS AND PROCEDURAL HISTORY

### Secret Indictment

{¶2} On July 6, 2020, the Holmes County Grand Jury issued a Secret Indictment against Defendant-Appellee Kyle D. Corn, charging him with five counts of Breaking and Entering, five counts of Vandalism, four counts of Petty Theft, two counts of Possessing Criminal Tools, and one count of Burglary. The charges were based on events that occurred on or about February 16, 2020. The Secret Indictment was filed with the Holmes County Clerk of Courts on July 6, 2020 and assigned Case No. 20CR043. The caption of the Secret Indictment named Kyle D. Corn as the defendant and listed his address as located in Elyria, Ohio.

{¶3} Also on July 6, 2020, the State filed a "Prosecuting Attorney's Request for Issuance of Warrant on Indictment" pursuant to Criminal Rule 9. The filing requested, "Issue Warrant to the Sheriff of Holmes County and direct them to make personal service upon defendant at the address stated in the caption of this request."

{¶4} The State also filed a Bail Recommendation, where it commented that "Defendant presently under indictment a [sic] investigation in multiple counties." The State requested a warrant to be issued and, pursuant to Crim.R. 6(E), the indictment be kept secret until Corn was in custody.

{¶5} The Holmes County Sheriff's Office received Corn's warrant on July 9, 2020.

{¶6} According to the Holmes County Clerk of Courts, if an indictment is listed as "secret," information about that case would not be visible on the online portal to the Holmes County Clerk of Courts docket until the Clerk's office received return service of the warrant. (Nov. 8, 2021 T. 15). The case number for the secret, unserved indictment would only be known to the Clerk's Office and the prosecutor's office. (Nov. 8, 2021 T. 15).

### Corn in Custody of ODRC

{¶7} In June 2020, Corn was held in the Medina County Jail. (Nov. 8, 2021 T. 7). While he was in the Medina County Jail, Corn spoke with Kyle Vaughn from the Holmes County Sheriff's Office. On August 19, 2020, Corn was transferred to the Ohio Department of Corrections in Orient, Ohio. (Nov. 8, 2021 T. 7).

{¶8} On August 21, 2020, the Ohio Department of Rehabilitation and Corrections ("ODRC") issued a notice regarding Corn and the warrant issued in Case No. 20CR043 to the Holmes County Sheriff's Office. ("Exhibit B"). Corn did not recall receiving a copy of the notice. The notice to the Holmes County Sheriff's Office stated:

DATE: 8/21/2020

TO: HOLMES COUNTY SHERIFF'S OFFICE

RE: CORN, KYLE D.

OUR: A773436; WARRANT #: 20CR043

* * *

This is to acknowledge the receipt of the detainer on the above named

subject. The above inmate is currently serving:

SENTENCE: *3.00 HB86-5

MOST SERIOUS OFFENSE: 2911.12 5 – BURGLARY

COUNTY OF COMMITMENT: MEDINA

The release date is 6/23/2023. CORN, KYLE D. will be given the opportunity

to file a Quick and Speedy Trial if your charges are for an untried indictment.

{¶9}   We note the Warrant Number listed in the notice is #20CR043. The case

number assigned to the Secret Indictment against Corn is Case No. 20CR043.

{¶10} Also on August 21, 2020, the ODRC issued a notice to Corn about a

"WANTED DETAINER." ("Exhibit A"). The notice stated:

DATE DETAINER PLACED: 8/19/2020

NAME OF OFFENDER: CORN, KYLE D.

* * *

EXPECTED RELEASE: 6/23/2023

WANTED BY:

HOLMES COUNTY SHERIFF'S OFFICE

* * *

OTHER DETAINERS:

ERIE COUNTY SHERIFF'S OFFICE

* * *

SENECA COUNTY SHERIFF'S OFFICE

* * *

We will notify you 30 days before Parole Hearing and 30 days before

release.

Corn signed the Wanted Detainer notice on August 26, 2020. His signature on Exhibit A was witnessed on August 26, 2020 by a ODRC employee.

### Pro Se Motion to Dismiss

{¶11} On June 9, 2021, Corn filed a pro se Motion to Dismiss Indictment arguing that he had been deprived of his right to a speedy trial in Case No. 20CR043. In support of his motion, Corn stated that he filed a request for a speedy trial in August 2020. Of note, Corn captioned his pro se motion to dismiss with the correct case number, Case No. 20CR043.

{¶12} The State responded to the motion on June 10, 2021, arguing that it did not receive a Notice of Availability from Corn in August 2020. Further, Corn had not been served with the Secret Indictment, so the speedy trial had not started to run.

### The Secret Indictment is Served

{¶13} The Holmes County Sheriff's Office served Corn with the Secret Indictment on June 23, 2021.

### Motion to Dismiss Proceedings

{¶14} After Corn was served with the indictment and arraigned, he was appointed counsel. Through counsel, Corn filed a Motion to Supplement his original motion to dismiss. The October 19, 2021 supplement raised further grounds to support his motion to dismiss the indictment based on speedy trial violations, including R.C. 2941.401, R.C. 2945.71, and the Sixth Amendment. A memorandum of support followed on November 4, 2021. Corn argued he provided Notice of Availability to the State in August 2020.

{¶15} The State responded to the supplemented Motion to Dismiss on November 5, 2021. In its argument, the State contended the earliest the speedy trial clock could start

was on June 9, 2021, when Corn filed his pro se motion to dismiss. Calculating from June 9, 2021, the case was within the speedy trial time parameters.

{¶16} On November 8, 2021, the trial court held a hearing on Corn's motion to dismiss. Corn and the State stipulated to facts raised in Corn's November 4, 2021 memorandum: (1) Corn was indicted on July 6, 2020; (2) the Holmes County Sheriff's Office received the warrant on July 9, 2020; (3) Corn filed his pro se Motion to Dismiss on June 9, 2021, which stated he sent a request for final disposition in August 2020; and (4) the Holmes County Sheriff's Office served the indictment on June 23, 2021. (Nov. 8, 2021 T. 3).

{¶17} Corn testified that while he was incarcerated at the Ohio Department of Corrections in Orient, Ohio, he sent a motion of availability, also known as a request for final disposition, to Holmes County in August 2020. (Nov. 8, 2021 T. 7). He stated he spoke with a female case manager who informed him of untried indictments in Seneca and Erie Counties. (Nov. 8, 2021 T. 8). When asked how he was aware of the existence of the Holmes County Case No. 20CR043 prior to being served with the indictment on June 23, 2021, Corn answered:

A. From when I uh, got to CRC and they uh, let me know about all the untried indictments and warrants I had.

Q. Okay. So on the uh, on the Motion to Dismiss Indictment that has you uh, that the docket indicates you filed, the time stamp June 9, 2021 there is a case number on that document in the caption of 20CR043. Did you write that case number in?

A. Yes sir.

Q. And how did you know that case number?

A. From the CRC employees.

Q. Did they inform you of that in August of 2020?

A. Yes sir.

(Nov. 8, 2021, 9-10). Corn stated he did not submit a form asking the warden's office to notify the Holmes County Prosecutor's Office that he was available for trial, but the case manager had him fill out forms that she stated would be sent to the warden. Corn testified the case manager did not provide him with copies of those papers. (Nov. 8, 2021 T. 10). He waited until June 2021 to follow up with the August 2020 Notice of Availability because after he was in the CRC for 40 days, in October 2020, he was sent to Lake Erie Correctional for two weeks, then Seneca County from October 2020 to February 2021, and then returned to Lake Erie Correctional. (Nov. 8, 2021 T. 11-12).

{¶18} The Holmes County Clerk of Courts testified at the hearing, explaining how a secret indictment appears in the online records of the Clerk of Courts. She testified that if the ODRC is seeking information regarding an unserved and untried indictment, the Clerk refers them to who originated the indictment, which would be the prosecutor's office. (Nov. 8, 2021 T. 15). The Clerk of Courts did not know how Corn filed his pro se motion to dismiss with the correct case number prior to being served with the indictment. (Nov. 8, 2021 T. 15).

{¶19} The hearing concluded because the ODRC witnesses subpoenaed by Corn did not appear for the November 8, 2021 hearing. The trial court issued a judgment entry on November 8, 2021, continuing the hearing to November 17, 2021 and setting the matter for a show cause hearing.

{¶20} At the November 17, 2021 hearing, the show cause issues were resolved, and the hearing was continued to December 6, 2021.

### ODRC Procedures

{¶21} On December 6, 2021, Charlotte Griffiths, case manager with the Corrections Reception Center, testified as to how she assisted inmates with the Notice of Availability:

Q. Um, is it your practice to inform inmates of their right of notice of availability?

A. When we receive that paperwork we uh, go ahead and have them sign it. And then after they sign it we go ahead and forward it back to our central office.

Q. Okay. So when you say the paperwork, like the paperwork that you're relaying to an inmate would it explain in writing what a notice of availability is and how it works?

A. Yes. What it would be a um, wanted detainer and it would have the date that the detainer is placed, the offender's name, their number, their release date and then what county they are wanted by and then also if there were other detainers that were listed on that paperwork.

(Dec. 6, 2021, T. 5). Corn's counsel showed Exhibit A, the notice signed by Corn on August 26, 2020, to Griffiths:

Q. So this document here, which I'm referring to Exhibit A you're saying that this was notice of availability that was given to Mr. Corn?

A. Yeah that's what I would have received and that's what I would have given to him, have him sign and that's what I would have forward back to our detainer section.

Q. Okay. So this, is this the, the form that it usually takes, this document?

A. Yes.

(Dec. 6, 2021 T. 5). Griffiths had signed Exhibit A as the witness signature on August 26, 2020.

{¶22} During Griffith's testimony, she referred to paperwork known at the ODRC as a "fast and speedy." (Dec. 6, 2021 T. 6). She did not know whether the "fast and speedy" was the same as a notice of availability, but it was what the ODRC referred "to as far as how much time they have to be able to have to file something in a speedy manner." (Dec. 6, 2021 T. 6). The State inquired further as to the notice of availability:

Q. Okay. Uh, now my understanding is that this is essentially a two-step process. One that the inmate is notified about outstanding warrants and then there's the second step of a process where the inmate actually requests a, a, a speedy trial and notifies the county is that correct?

A. So there are times that I would just get this page that you guys have on your screen [Exhibit A].

Q. Okay.

A. And there are other times I would get two (2) other pages to go with it.

Q. Okay. Alright.

A. But, I don't recall getting any other additional pages for him, other than the one you see right here.

Q. Okay. But this document that we have with regards to him is merely a document that notifies him that there is a detainer is that correct?

A. As far as my understanding yes.

(Dec. 6, 2021, T. 9). Griffiths conducted a records search to determine if there was any other paperwork related to Corn and the only documents located were Exhibit A and Exhibit B. (Dec. 6, 2021, T. 12).

{¶23} Regina Cox, supervisor for the ODRC detainer section, testified that ODRC did not have any record of a request for notice of availability by Corn. (Dec. 6, 2021, T. 15). The document she had was a "copy of the letter we sent to Mr. Corn and to um, the Holmes County Sheriff's office dated 8-19-2020 and that it when Mr. Corn first came in and was admitted to the Department of Corrections. And this is just basically a notify to him that he has a warrant out of Holmes County. Um, and then he signed it at the bottom stating that he acknowledged that he had the warrant." (Dec. 6, 2021, T. 15). Cox did not regard Exhibit A as a notice of availability. She stated, "* * * I guess it is probably a terminology thing. Like when you say notice of availability to that we um, we kind of look at that as a request for fast and speedy." (Dec. 6, 2021, T. 15). She agreed that a "fast and speedy" was synonymous with a notice of availability. (Dec. 6., 2021, T. 16). Cox explained further:

So I guess what, what I'm calling a notice of availability is the right for him to file that fast and speedy. Um, and right now we I don't have that that has been done. And the reason that has not been done or was not done is because um, we could not find the docket online and we since we could not find the docket online there we notified, we asked the um, sheriff's office, it

looks like Justin has notes here, he called and they let him know that it had

not been served, the warrant had not been served. So therefore a fast and

speedy could not be completed.

(Dec. 6, 2021, T. 16). In this particular case, Cox testified it was a two-part process because when Corn initially came in, ODRC notified him of the Holmes County warrant, but Corn had not been served with the warrant. ODRC would have to notify Corn that he could file a request for a speedy trial after the actual warrant had been served. (Dec. 6, 2021, T. 19). The triggering event to start the process is when the sheriff serves him. (Dec. 6, 2021, T. 18).

{¶24} Cox testified that as of December 6, 2021, Corn had not been informed in writing of his right to fast and speedy and/or the notice of availability. (Dec. 6, 2021, T. 17). However, Cox later testified that Corn was provided a copy of Exhibit B, which indicated he has a right to a quick and speedy trial. (Dec. 6, 2021, T. 19). ODRC had not received any kites from Corn requesting that the matter proceed to a speedy trial. (Dec. 6, 2021, T. 19).

{¶25} Corn's counsel attempted to clarify the ODRC process on redirect examination:

Q. Uh, as, as I had asked you earlier, service of the indictment would have

functioned as a triggering event is that correct?

A. Yes.

Q. To get and so when, when we're saying that he never sent you any

request uh, or kites for a uh, to file a notice of availability it's under, your

understanding that he; you have not met the, the State or the prison had not yet informed him of, in writing, of his right to do so?

A. The prison did inform him of his right.

Q. Well then what would be the what, what, what is so when the indictment is served what is triggered by that?

* * *

A. So they when the indictment is served if the um, is we don't know about it in our office. Then by either the inmate letting us know, via kite, or the sheriff's office or the court letting us know that that indictment has been served then when won't have a trigger to um, basically move forward with the fast and speedy paperwork.

Q. Okay so there would be new paperwork you would give him once he's served?

A. Correct.

Q. So all the information that have about fast and speedy (unintelligible) notice of availability you've not given him yet until the Holmes County Sheriff serves it?

A. The actual paperwork for him to sign that's correct.

Q. Okay. So he's the paperwork he's going to sign you're saying that, that would signify that he has now been informed, in writing, of his right to fast and speedy is that the document you're talking about for him to sign?

A. Um, I think, I think I'm getting a little confused, like he actually has been informed of his right on August 21st. Um, however, I, I think I get what you're

saying um, he was never presented with what we call forms 2089 and 29, which is the right to file the fast and speedy and he would have to sign that paperwork saying yes he does or does not want it. But yeah, that was never served to him.

Q. And even to this day it has not been served?

A. No because we at our institution we have never had any indication that the um, that the warrant has ever been served to him until he went out to court.

(Dec. 6, 2021, T. 20-21).

{¶26} The trial court issued a judgment entry on December 7, 2021 requesting written closing arguments and proposed findings of fact and conclusions of law.

## Judgment

{¶27} On January 20, 2022, the trial court issued its judgment entry granting Corn's motion to dismiss the indictment. The trial court accepted and adopted Corn's proposed findings of facts and conclusions of law, where it found the Holmes County Sheriff's Office failed to timely serve Corn with the untried indictment when it had notice of Corn's location, the ODRC failed to properly inform Corn of the contents of the untried indictment and Corn's right to request a final disposition, and Corn's constitutional rights to a speedy trial were violated.

{¶28} It is from this judgment that the State now appeals.

**ASSIGNMENTS OF ERROR**

{¶29} The State raises two Assignments of Error:

"I. THE TRIAL COURT ERRED BY DETERMINING THAT DEFENDANT'S SPEEDY TRIAL RIGHTS WERE VIOLATED PURSUANT TO R.C. 2941.401.

"II. THE TRIAL COURT ERRED IN DISMISSING THE INDICTMENT BASED ON A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL."

**ANALYSIS**

{¶30} In its first and second Assignments of Error, the State contends the trial court erred when it granted Corn's motion to dismiss the indictment based on violations to Corn's right to a speedy trial. We disagree.

**I.**

**Standard of Review**

{¶31} Corn's motion to dismiss was premised upon an alleged violation of his right to speedy trial. A speedy trial claim involves a mixed question of law and fact. *State v. Hickinbotham*, 5th Dist. Stark No. 2018CA000142, 2019-Ohio-2978, 2019 WL 4780988, ¶ 26 citing *State v. Jenkins*, 5th Dist. Stark No. 2009-CA-00150, 2010-Ohio-2719, ¶ 31, citing *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. *Id.* With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. *Id.*

{¶32} When reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the State. *State v. Austin*, 5th Dist. Fairfield No. 18-CA-18, 2019-Ohio-686, 2019 WL 982237, ¶ 36; *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶ 12.

{¶33} In his motion to dismiss the indictment, Corn raised multiple arguments to the trial court as to how his right to a speedy trial was violated. The trial court found his rights to a speedy trial were violated pursuant to R.C. 2941.401 and to the Sixth Amendment of the U.S. Constitution.

### R.C. 2941.401

{¶34} R.C. 2941.401 controls the speedy trial rights of a defendant who is in prison. *State v. Austin*, 5th Dist. Fairfield No. 18-CA-18, 2019-Ohio-686, 2019 WL 982237, ¶ 60 citing *State v. Smith*, 140 Ohio App.3d 81, 86, 2000-Ohio-1777, 746 N.E.2d 678 (3rd Dist.). The statute governs the actions an individual incarcerated in a state prison must take to dispose of other charges pending from other Ohio courts and how to invoke that person's speedy trial rights on those pending charges. *State v. Johnson*, 9th Dist. Summit Nos. 28515, 28822, 2018-Ohio-2004, ¶ 35.

{¶35} R.C 2941.401 reads:

When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the

prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.

The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

* * *

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has

jurisdiction thereof, the indictment, information, or complaint is void, and the

court shall enter an order dismissing the action with prejudice.

{¶36} The Ohio Supreme Court has held that, pursuant to R.C. 2941.401, the initial duty is placed on the defendant to notify the prosecutor and the court of his place of incarceration and to request final disposition of outstanding charges. *State v. Hairston*, 101 Ohio St.3d 308, 804 N.E.2d 471, 2004–Ohio–969. "In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term." *Id*. at 311, 804 N.E.2d 471. This Court has previously held that the act of giving or sending the written notice and request for disposition to the warden satisfies the "causes to be delivered" requirement of the statute. *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017-Ohio-59, 2017 WL 90619, ¶ 13 citing *State v. Colon*, 5th Dist. Stark No. 09–CA–232, 2010–Ohio–2326, ¶ 26. We concluded that ruling otherwise circumvents the remedy afforded an inmate under R.C. 2941.401, by allowing the warden to ignore or delay an inmate's request for final disposition. *Id*. "The right of a defendant to a speedy trial should not be excused by the failure of a state agent to perform his statutory duty." *Id. See also, State v. Lear*, 5th Dist. Licking No. 15–CA–72, 2016–Ohio–2675.

{¶37} In this case, Corn contends that when he signed Exhibit A, he believed he was availing himself of the Notice of Availability, or the "fast and speedy" as described by the ODRC personnel. ODRC employees Griffiths and Cox provided conflicting testimony as to the bureaucratic procedures under R.C. 2941.401 and what documentation was provided to Corn while he was in ODRC custody. Griffiths testified Exhibit A was the

Notice of Availability. She stated she sometimes received two pages of documentation, but in this case, she only received Exhibit A. She provided Exhibit A to Corn, he signed the form, and she forwarded Exhibit A to the detainer section. Cox, on the other hand, testified Exhibit A was not a Notice of Availability. She stated there was a two-step process where the inmate would be provided Exhibit A and then a second form, which she described as a "fast and speedy" form. In this case, while Corn was provided with Exhibit A, the ODRC did not provide him with a fast and speedy form, nor has it as of the date of the hearing. Cox testified ODRC did not provide Corn with a fast and speedy form because (1) the ODRC could not find any information online as to the Secret Indictment, and (2) Holmes County had not served Corn with the Secret Indictment, which would then trigger the ODRC to provide Corn with the fast and speedy form. Corn, however, was able to obtain the Holmes County case number for the matter, Case No. 20CR043, prior to being served with the Secret Indictment and included it on his pro se motion to dismiss filed in the Holmes County Court of Common Pleas. He testified he received the case number from the ODRC employees. The warrant number listed on Exhibit B is the same as the case number in this case. While Corn did not recall receiving Exhibit B, Cox testified that Corn was provided with Exhibit B, which stated he had the right to a quick and speedy trial.

{¶38} To strictly follow R.C. 2941.401 requirements, Corn should have given his written notice to the prison authorities, who should have forwarded it to the prosecutor and the court along with a certificate of inmate status. *State v. Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036. Ohio law, however, permits substantial compliance with R.C. 2941.401 by the inmate. *State v. Moore*, 2014-Ohio-4879, 23

N.E.3d 206, ¶ 22 (3rd Dist.). Based on stipulated facts and the testimony of Corn, Griffiths, and Cox, the specific circumstances of this case raise the issue of substantial compliance.

## Substantial Compliance

{¶39} "While in general, the one hundred eighty day time requirement of R.C. 2941.401 does not begin to run until an inmate demands a speedy resolution of a pending charge, this is premised on the prosecutor exercising reasonable diligence in properly notifying the inmate concerning the indictment. The state cannot avoid the application of R.C. 2941.401 by neglecting to inform the custodial warden or superintendent of the source and content of an untried indictment. [*State v. Carter* (June 30, 1981), Franklin App. No. 80AP-434]. Equally, the state cannot rely upon the prisoner's failure to make demand for speedy disposition, but must count the time as having commenced upon the first triggering of the state's duty to give notice of the right to make demand for speedy disposition. *Fitch, supra*, at 162. If a prosecutor has not exercised reasonable diligence in notifying an inmate of pending charges, the proper remedy is a motion to dismiss for denial of a speedy trial. *Id.*" *State v. Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, 2007 WL 2269481, ¶ 42 quoting *State v. Rollins* (Nov. 17, 1992), 10th Dist. No. 92 AP-273.

{¶40} "Substantial compliance requires the defendant to do 'everything that could be reasonably expected.' *State v. Ferguson* (1987), 41 Ohio App.3d 306, 311, 535 N.E.2d 708. 'The key to determining when the 180-day period begins * * * is delivery upon the receiving state and its court. * * * What is important is there be documentary evidence of the date of delivery to the officials of the receiving state.' *State v. Pierce*, Cuyahoga App. No. 79376, 2002-Ohio-652. *See, also, Daugherty v. Solicitor for Highland County* (1971),

25 Ohio St.2d 192, 193, 267 N.E.2d 431 (holding that '[w]here an inmate in a penal institution has made a diligent, good-faith effort to call to the attention of the proper authorities in another state that he desires a charge pending against him in that state disposed of, by trial or dismissal, he is entitled to have such request acted upon. The failure of the authorities to do so constitutes the denial of a speedy trial.' (Relying on *Smith v. Hooey* (1969), 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607.)" *State v. Antos*, 8th Dist. No. 88091, 2007-Ohio-415 at ¶ 11-13. *State v. Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, 2007 WL 2269481, ¶ 44.

{¶41} "An inmate's 'notification of availability and request for final disposition' can take several forms, depending on the circumstances of the inmate. Inmates are sometimes in halfway houses or municipal jail facilities where a warden or superintendent may or may not be present as contemplated in R.C. 2941.401. At times, inmates take it upon themselves to notify the court and prosecutor directly, outside the prescribed method in R.C. 2941.401. *See State v. Drowell* (1991), 61 Ohio Misc.2d 623, 581 N.E.2d 1183. Even where the prescribed method is used, variations in notification still occur. *See State v. Fox* (Oct. 22, 1992), Cuyahoga App. No. 63100 and *State v. Fox* (Dec. 17, 1998), Cuyahoga App. No. 74641." *State v. Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, 2007 WL 2269481, ¶ 38 quoting *State v. Gill*, 8th Dist. No. 82742, 2004-Ohio-1245 at ¶ 10. (Footnotes omitted).

{¶42} The State argues that the fact pattern of this case fits squarely within *State v. Hairston*, 101 Ohio St.3d 308, 804 N.E.2d 471 (2004), where the Ohio Supreme Court held:

> Far from requiring the state to exercise reasonable diligence to locate an incarcerated defendant, R.C. 2941.401 places the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition; the statute imposes no duty on the state until such time as the incarcerated defendant provides the statutory notice. Further, a warden or prison superintendent has a duty to inform the incarcerated defendant of charges only when the warden or superintendent has knowledge of such charges.

*Hairston*, 2004-Ohio-969 at ¶ 20. In *Hairston*, the court found that the defendant "never caused the requisite notice of imprisonment and request for final disposition to be delivered to either the prosecuting attorney or the court; therefore, he never triggered the process to cause him to be brought to trial within 180 days of his notice and request." *Id.* at ¶ 21. The State contends that Exhibit A was not a Notice of Availability and therefore, Corn failed to meet the requirements of R.C. 2941.401. The first notice from Corn that complied with R.C. 2941.401 was his pro se motion to dismiss, filed on June 9, 2021.

{¶43} The evidence in this case supports the trial court's finding that the State knew in August 2020 where Corn was incarcerated. There is no factual dispute that the ODRC issued Exhibit B to be sent to the Holmes County Sheriff's Office. The State contends there is no evidence that the Holmes County Sheriff's Office received Exhibit B. The State, however, did not produce any witnesses from the Sheriff's Office to support its argument that Exhibit B was never received, and the Sheriff's Office only became aware of Corn's location after June 9, 2021.

{¶44} We also find there is an evidentiary conflict whether the ODRC knew of the Secret Indictment and properly informed Corn of the warrant and/or indictment. Corn testified that he obtained the case number of the indictment from the ODRC and in fact, the warrant number listed in the Exhibit B notice and the case number are identical, rendering a secret indictment not so secret. Further, two ODRC employees gave conflicting testimony as to what was a Notice of Availability. Griffiths testified Exhibit A was a Notice of Availability. Cox testified Exhibit A was not a Notice of Availability. Cox testified as of the date of the hearing, ODRC had not notified Corn of his right to a fast and speedy trial. In this case, the trial court resolved the evidentiary conflict against the State and in favor of Corn to find that pursuant to R.C. 2941.401, the ODRC failed to promptly inform Corn of the indictment and Corn substantially complied to provide the State with Notice of Availability in August 2020. The record in this case supports the trial court's determination as both to its findings of fact and conclusions of law.

{¶45} The State's first Assignment of Error is overruled.

## II.

{¶46} In its second Assignment of Error, the State contends the trial court erred when it dismissed the indictment based upon a violation of Corn's constitutional right to a speedy trial.

{¶47} Based upon our disposition of the State's first Assignment of Error, we find the second Assignment of Error to be moot under the two-issue rule.

**CONCLUSION**

{¶48} The judgment of the Holmes County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.