[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Williams,* Slip Opinion No. 2023-Ohio-3647.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3647

THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Williams*, Slip Opinion No. 2023-Ohio-3647.]**

*Criminal law—R.C. 2941.401—A prisoner satisfies the "causes to be delivered" requirement of R.C. 2941.401 when he delivers written notice of place of his imprisonment and request for final disposition of pending matter to warden where he is imprisoned, even if warden fails to deliver notice and request to prosecuting attorney or appropriate court—Court of appeals' judgment reversed.*

(No. 2022-0121—Submitted February 7, 2023—Decided October 10, 2023.)

APPEAL from the Court of Appeals for Lorain County,

No. 20CA011703, 2021-Ohio-4469.

_____

**DONNELLY, J.**

**{¶ 1}** R.C. 2941.401 delineates how an Ohio prisoner is to enforce his constitutional right to a speedy trial on an untried indictment.  The statute triggers the 180-day speedy-trial clock to start running when the prisoner "causes to be delivered" to the prosecuting attorney and the appropriate court a written notice of

the place of his imprisonment and a request for a final disposition of the pending matter. Today, we hold that a prisoner satisfies the "causes to be delivered" requirement of R.C. 2941.401 when he delivers the written notice and the request to the warden where he is imprisoned, even if the warden fails to deliver the notice and the request to the prosecuting attorney or the appropriate court. Therefore, we reverse the judgment of the Ninth District Court of Appeals, which held otherwise.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} In October 2018, appellant, Tyler Williams, was indicted in Lorain County on one count of aggravated robbery and two counts of robbery, and a warrant was issued for his arrest. In February 2019, Williams was sentenced in a separate case in Cuyahoga County to a prison term of three years. On March 7, 2019, he was transferred to the Lorain Correctional Institution ("LCI"), where he was immediately notified of the charges pending against him in Lorain County. That same day, with assistance from LCI's law-library staff, Williams completed and gave to LCI's warden a written notice of the place of his imprisonment and a request for a final disposition pursuant to R.C. 2941.401. Williams did not receive a response.

{¶ 3} In March 2019, the Ohio Department of Rehabilitation and Correction sent a letter to the Lorain County Sheriff's Office informing it of charges pending against Williams in its jurisdiction. The letter explained that Williams had expressed an interest in disposing of the pending aggravated-robbery and robbery charges while incarcerated and that he would be offered the opportunity to file for a quick and speedy trial on those charges. The trial court found that this letter would not have been sent unless Williams had first sent a written notice and request to the warden under R.C. 2941.401.

{¶ 4} Having received no response to his written notice of the place of his imprisonment and his request for a final disposition, Williams repeated the process about a week later. Another month passed with no response, so Williams completed

and gave a third written notice and request to the LCI warden. Once again, Williams did not receive a response. Despite receiving the various written notices and requests from Williams—and despite having a statutory duty to do so—the warden never sent the written notices and requests to the prosecuting attorney or the appropriate court.

{¶ 5} Williams was later transferred to Richland Correctional Institution and then to Lake Erie Corrections, where he completed his sentence. After his release, in September 2020, Williams was arrested on the outstanding charges in Lorain County. Williams was arraigned and pleaded not guilty to the counts of aggravated robbery and robbery. He then filed a motion to dismiss the indictment on speedy-trial grounds, which the trial court granted. The court concluded that Williams had strictly complied with R.C. 2941.401 when he provided written notice of his place of imprisonment and a request for a final disposition to the warden at LCI and that the 180-day speedy-trial time was not tolled by the warden's failure to comply with his duty under the statute.

{¶ 6} The state appealed. The Ninth District reversed the trial court's judgment based on its own precedent, concluding that Williams had not strictly complied with the requirements of R.C. 2941.401, because Williams had not caused the delivery of the notice and request to the prosecuting attorney and the appropriate court and the speedy-trial clock therefore never began to run. 2021-Ohio-4469, ¶ 17.

{¶ 7} We accepted Williams's appeal on the following proposition of law: "An incarcerated individual satisfies the 'causes to be delivered' obligation in R.C. 2941.401 by making a written demand to the warden of the incarcerating institution." *See* 166 Ohio St.3d 1448, 2022-Ohio-994, 184 N.E.3d 158.

**STANDARD OF REVIEW**

{¶ 8} Williams asserts that the court of appeals made an error of law when it held that he did not strictly comply with R.C. 2941.401. We review alleged errors

of law de novo. *Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147, 593 N.E.2d 286 (1992).

## ANALYSIS

{¶ 9} We agree with Williams that the court of appeals made an error of law. R.C. 2941.401 does not put burdens on a prisoner to deliver a written notice of his place of imprisonment and a request for a final disposition beyond the explicit requirement that he deliver the notice and the request to the warden. R.C. 2941.401 states:

When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, *he shall be brought to trial within one hundred eighty days after* **he causes to be delivered** *to the prosecuting attorney and the appropriate court* in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having

custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.

> \* \* \*

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

(Emphasis and boldface added.)

{¶ 10} The resolution of the dispute in this case depends on the meaning of "causes to be delivered" in R.C. 2941.401. The Third, Fifth, and Eighth District Courts of Appeals have held that a prisoner satisfies the requirements of R.C. 2941.401 and starts the 180-day speedy-trial clock when he provides written notice of the place of his imprisonment and a request for final disposition to the warden. *See State v. Moore*, 2014-Ohio-4879, 23 N.E.3d 206, ¶ 29 (3d Dist.); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶ 26; *State v. Gill*, 8th Dist. Cuyahoga No. 82742, 2004-Ohio-1245, ¶ 26. Here, however, the Ninth District held that only actual delivery of the notice and the request to the prosecuting attorney and the appropriate court triggers the 180-day speedy-trial clock to start running. 2021-Ohio-4469 at ¶ 17.

{¶ 11} The state argues that R.C. 2941.401 is unambiguous and therefore should be applied as written. According to the state, a prisoner's providing a written notice of the place of his imprisonment and a request for a final disposition to the warden where he is incarcerated does not cause that notice and request to be delivered for purposes of the statute. Therefore, the state contends, Williams has not satisfied the "causes to be delivered" requirement of R.C. 2941.401. The Ninth

District agreed, stating that R.C. 2941.401 is triggered only upon a showing of delivery of a written notice and a request to both the prosecuting attorney and the appropriate court. 2021-Ohio-4469 at ¶ 17. A dissenting judge countered that "failure of the warden to cause notice to be sent should not be attributed to the prisoner." *Id.* at ¶ 21 (Callahan, J., dissenting).

{¶ 12} The state relies on *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 20, in which this court held that the state is not required to exercise reasonable diligence in locating an incarcerated defendant who has criminal charges pending so that he may file a notice of his imprisonment and a request for a final disposition with the warden. Not only are the facts of *Hairston* inapposite, but the tenor of that opinion is more supportive of Williams's position than of the state's. In *Hairston*, the prisoner did not give notice and a request to the warden, because he did not know that an indictment against him had been filed. *Id.* at ¶ 8, 21. Nevertheless, we stated that R.C. 2941.401 "unambiguously impose[s] the initial duty upon the defendant to trigger action on the part of the state." *Id.* at ¶ 24. Williams fulfilled that initial duty here.

{¶ 13} The state also relies on *Fex v. Michigan*, 507 U.S. 43, 52, 113 S.Ct.1085, 122 L.Ed.2d 406 (1993), in which the United States Supreme Court held that a prisoner's actual delivery of his request for a final disposition of pending charges is necessary to trigger the 180-day speedy-trial clock under the Interstate Agreement on Detainers ("IAD"). The IAD and R.C. 2941.401 contain similar language, but the IAD applies to prisoners who are incarcerated in one state or in a federal prison but are accused of having committed crimes in another state, whereas R.C. 2941.401 applies to prisoners who are accused of having committed crimes in Ohio and are held in Ohio state prisons. Moreover, in *Fex*, the prisoner had given his notice and request to the warden, and the warden had mailed the notice and request to the prosecuting attorney and the court. *Id.* at 46. The only question was whether the 180-day speedy-trial clock began to run when the prisoner delivered

6

his notice and request for a final disposition to the warden or when the court and the prosecuting attorney received them. In *Fex*, the United States Supreme Court held that the speedy-trial clock begins to run upon delivery of the notice and request to the court and the prosecuting attorney. *Id.* at 52. Because the holding in *Fex* is based on the analysis of a different statute and different circumstances, *Fex* does not control the outcome here. But this court's interpretation of the language of the IAD remains good law. *See State v. Mourey*, 64 Ohio St.3d 482, 597 N.E.2d 101 (1992), paragraph one of the syllabus (the 180-day time period in Ohio's codification of the IAD "begins to run when a prisoner substantially complies with the requirements of the [IAD]").

{¶ 14} In this case, Williams argues that when he delivered the written notice of his place of imprisonment and his request for a final disposition to the warden at LCI, he satisfied the "causes to be delivered" requirement of R.C. 2941.401. He argues that his actions triggered the 180-day speedy-trial clock to begin running because he met every requirement in his power to cause delivery of the notice and the request and that he should not be penalized for the warden's negligence or bad faith. *Compare Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 26. See also *Mourey* at paragraph two of the syllabus ("A prisoner substantially complies with [the 180-day notice-and-request language of the IAD] when he or she causes to be delivered to the prison officials where incarcerated, appropriate notice or documentation requesting a disposition of the charges for which the detainer has been filed against him or her").

{¶ 15} We have already held that R.C. 2941.401 does not allow a prisoner to be punished for the failures of the state. In *State v. Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, 870 N.E.2d 1149, ¶ 23, we held that R.C. 2941.401 requires the state to dismiss untried charges against a prisoner when the state fails to inform the prisoner in writing of the charges against him and of his speedy-trial rights. In *Dillon*, the state asked a warden in February 2004 to serve an indictment for

burglary on a prisoner in his custody. *Id.* at ¶ 5. The prisoner was not served with the indictment until August 2004. *Id.* at ¶ 8. We held that the speedy-trial clock began to run in February even though no notice and request had been delivered to the prosecuting attorney and the court during the prisoner's incarceration. *Id*. at ¶ 18. Because the warden had not given the prisoner written notice of the burglary indictment against him as required by R.C. 2941.401 until after the 180-day speedy-trial period had passed, we affirmed the court of appeals' judgment that reversed the defendant's burglary conviction. *Id*. at ¶ 23. Indeed, we stated, "Permitting a warden or superintendent to avoid complying with the duty imposed by R.C. 2941.401 would circumvent the purpose of the statute and relieve the state of its legal burden to try cases within the time constraints imposed by law." *Id.* at ¶ 23. We thereby impliedly rejected the tenet that the "causes to be delivered" language of R.C. 2941.401 requires actual delivery to the prosecuting attorney and the appropriate court.

{¶ 16} In *Dillon*, we rejected the hyper-technical reading of R.C. 2941.401 that the state proffers in this case. R.C. 2941.401 states that after a prisoner delivers written notice of his place of imprisonment and a request for a final disposition "to the warden * * * having custody of him," the warden "shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested." In this case, Williams satisfied his every obligation under the statute three times. We therefore follow our precedent in holding that Williams caused his written notice and request to be delivered when he provided them to the warden at LCI.

{¶ 17} The General Assembly is well aware that prisoners cannot themselves cause the written notice and request under R.C. 2941.401 to be delivered to the prosecuting attorney and the appropriate court. What the prisoner can do is provide the written notice and request to the warden having custody of him. That compliance with R.C. 2941.401 triggers a statutory duty of the warden.

In this case, Williams triggered the LCI warden's statutory duty as prescribed by the General Assembly. We have consistently held that when a warden fails to act, whether intentionally, inadvertently, or otherwise, the consequences of that failure should inure to the state on whose behalf the warden acts. We see no reason to deviate from that precedent now.

## CONCLUSION

{¶ 18} A prisoner satisfies the "causes to be delivered" requirement in R.C. 2941.401 by providing written notice of the place of his imprisonment and a request for final disposition to the warden of the institution where he is incarcerated. Therefore, Williams caused to be delivered his written notice and request for final disposition under that statute even though the warden failed to deliver them to the prosecuting attorney and appropriate court. Accordingly, we reverse the judgment of the Ninth District Court of Appeals.

Judgment reversed.

FISCHER, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., dissents, with an opinion joined by KENNEDY, C.J., and DETERS, J.

_____

**DEWINE, J., dissenting.**

{¶ 19} This case presents a simple question: Can someone cause a notice to be delivered if the notice is never actually delivered? The obvious answer is no. It "is self-evidently true" that "no one can have 'caused something to be delivered' unless delivery in fact occurs." *Fex v. Michigan*, 507 U.S. 43, 47, 113 S. Ct. 1085, 122 L.Ed.2d 406 (1993).

{¶ 20} The majority, though, disregards the self-evident reading of R.C. 2941.401 in favor of one that reflects its own policy preferences. And while it makes a faint-hearted attempt to clothe its preferred reading in precedent, ultimately its decision is grounded in its own conception of what the statute ought to say. I

don't believe that disliking a statute is a good reason to disregard its text. So I must dissent.

### *An Unambiguous Statute*

{¶ 21} The federal and state Constitutions guarantee a defendant the right to a speedy trial. *See* Sixth Amendment, U.S. Constitution; Article I, Section 10, Ohio Constitution. This constitutional right is not at issue in this case. What is at issue is a special provision that the state legislature has enacted that deals with prisoners who are in custody for one matter and face charges in other proceedings. That provision provides that when

> there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days *after he causes to be delivered* to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter * * *.

(Emphasis added.) R.C. 2941.401.

{¶ 22} Here, Tyler Williams provided notice to the warden where he was imprisoned of pending charges against him, but the warden neglected to send the notice to the prosecutor and the appropriate court. Under a plain reading of the statute, the 180-day period never began because the notice was never "delivered to the prosecuting attorney and the appropriate court in which the matter is pending," *id.*

{¶ 23} The majority, though, eschews the plain reading. Instead, it advances the view that a defendant may have caused a notice to be delivered even though it was not actually delivered. *See* majority opinion, ¶ 1. As a matter of linguistics, this is nonsense, of course. *Webster's Third New International*

*Dictionary* 356 (1986) offers the following definitions for "cause" as a transitive verb: "to serve as cause or occasion of"; "bring into existence"; and "to effect by command, authority, or force," *id.* at 356. Similarly, it defines the noun "cause" as a "person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or state." *Id.* Obviously, one cannot "bring into existence" something that never happens. Nor can one "effect" an action that doesn't ensue.

{¶ 24} But, of course, we don't need a dictionary to understand that the majority's reading of R.C. 2941.401 is at odds with its plain meaning. No ordinary speaker of the English language would say that someone caused a war if war was averted. And no one would say that the mixture of two chemicals caused a reaction if a reaction didn't result.

{¶ 25} Indeed, when confronted with nearly identical statutory language, the United States Supreme Court had little difficulty concluding that a prisoner cannot have caused a notice to be delivered unless it was actually delivered. *See Fex*, 507 U.S. at 47, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406. In *Fex*, the court took up an appeal from the Michigan Supreme Court under the Interstate Agreement on Detainers ("IAD"), a statute that imposes nearly identical requirements for the exercise of statutory speedy-trial rights for out-of-state prisoners as R.C. 2941.401 does for in-state prisoners. *See Fex* at 46-47. At issue was the commencement date for the 180-day clock. *Id.* at 47. The United States Supreme Court began its analysis by making short shrift of the position advanced by the majority today:

> [The state] argues that no one can have "caused something to be delivered" unless delivery in fact occurs. That is self-evidently true, and so we must reject [the prisoner's] contention that a prisoner's transmittal of an IAD request to the prison authorities

commences the 180-day period even if the request gets lost in the mail and is never delivered to the "receiving" State * * *.

(Footnote omitted.) *Id.* Thus, if we decide this case based simply on the statutory text, the state prevails.[1]

### *The Cases Cited by the Majority Do Not Justify*
### *Ignoring Unambiguous Statutory Text*

**{¶ 26}** The majority never engages with the plain meaning of the phrase "causes to be delivered," R.C. 2941.401. Instead, it tries to cobble together support for its atextual reading from our caselaw. But the cases it cites do not justify disregarding unambiguous statutory text.

**{¶ 27}** For example, the majority cites *State v. Mourey*, 64 Ohio St.3d 482, 597 N.E.2d 101 (1992), paragraph one of the syllabus, in support of a "substantial compliance" standard for claims under the IAD. *See* majority opinion at ¶ 13. But *Mourey*'s substantial-compliance standard was effectively overruled by the United States Supreme Court. *See Fex* at 52. *Fex* rejected any notion that a prisoner's best efforts to cause notice to be delivered would suffice, and instead, the court strictly construed the requirements of the IAD. *Id.* at 47. Nevertheless, the majority says that "this court's interpretation of the language of the IAD [in *Mourey*] remains good law." Majority opinion at ¶ 13. But that's flat wrong. In addition to being codified as state law, the IAD is a compact among the states that has been approved by the United States Congress under the authority of the Compacts Clause of the U.S. Constitution, Article I, Section 10, cl. 3. *See* 18 U.S.C.App. Section 2; *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Consequently, decisions of the United States Supreme Court are controlling over

---

1. Of course, in an appropriate case, a prisoner might have other remedies for the failure of a prison warden to comply with his legal obligation to forward the statutory notice, including mandamus and other civil actions.

conflicting state decisions. *Carchman* at 719. ("The [IAD] is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction").[2] Indeed, *Fex* itself involved an appeal from the Michigan Supreme Court's interpretation of Michigan's statutory enactment of the IAD. *Fex* at 44. If the federal interpretation were not controlling, the United States Supreme Court would not have had the authority to review the Michigan Supreme Court's judgment.

{¶ 28} The majority also cites *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, opining that the "tenor of that opinion is more supportive of Williams's position than the state's." Majority opinion at ¶ 12. But one would be hard-pressed to see how that is so. *Hairston* did not offer any insight into the question at issue in this appeal: whether a prisoner causes a notice to be delivered when that notice is never delivered. It did, however, firmly reject the type of extratextual analysis employed by the majority today:

> Hairston * * * seeks to have us read a duty of reasonable diligence into the statute; to accept his interpretation, "this court must read into the statute language that does not exist." *Middleburg Hts. v. Ohio Bd. of Bldg. Standards* (1992), 65 Ohio St.3d 510, 514, 605 N.E.2d 66. We decline to do so. Had the legislature wanted to impose such a duty on the state in similar cases, it could have done

---

2. It is also worth noting that because *Fex* is controlling for IAD claims, the majority's decision today means that prisoners in Ohio will be subject to different rules depending on whether they face in-state or out-of-state charges. For out-of-state charges, *Fex* controls and the 180-day clock doesn't start ticking until the notice is received by the prosecutor and the court. *See Fex* at 52. For in-state charges, under the majority's opinion the clock starts to tick as soon as notice is given to the warden. *See* majority opinion at ¶ 17.

so.  As our task is to apply unambiguous laws and not rewrite them, we decline to impose duties on prosecutors or courts not imposed by the legislature.

*Hairston* at ¶ 22.

{¶ 29} In fairness, the majority does cite one case that offers indirect support for its decision to look beyond what R.C. 2941.401 actually says: *State v. Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, 870 N.E.2d 1149.  *See* majority opinion at ¶ 15.  In *Dillon*, this court upheld the dismissal of charges based on a warden's failure to give written notice of pending charges to a prisoner in a timely manner.  Though the statute imposed a duty on the warden to notify the prisoner of the pending charges, nothing in the statutory language required dismissal as a remedy for the warden's failure.  *See* R.C. 2941.401.  But whatever the wisdom of the *Dillon* decision, it did not construe the "causes to be delivered" language that is at issue here.  *See Dillon* at ¶ 1, 23.  And nothing in *Dillon* requires that we ignore the plain import of the statutory language at issue in this case.

### *Policy Concerns Should Not Trump Plain Statutory Text*

{¶ 30} The majority's reading is contrary to plain text and finds only minimal support in our caselaw.  So how does one account for its holding?  The answer is evidently its concerns about the potential unfairness of a textual reading.  We are told that "R.C. 2941.401 does not allow a prisoner to be punished for the failures of the state," majority opinion at ¶ 15; that the state's reading of the statute is "hyper-technical," *id*. at ¶ 16; that "Williams satisfied his every obligation under the statute three times," *id*. at ¶ 16; that "[t]he General Assembly is well aware that prisoners cannot themselves cause the written notice and request under R.C. 2941.401 to be delivered," *id*. at ¶ 17; and that when a warden fails in his duties, "the consequences of that failure should inure to the state on whose behalf the warden acts," *id*. at ¶ 17.

{¶ 31} In essence, the majority believes that a literal interpretation of the statute is unfair to the prisoner who has diligently sought to exercise his rights under the statute. I don't disagree with the majority on that point. But where I part company with the majority is that I don't believe that this perceived unfairness gives us license to rewrite the statute.

{¶ 32} Policy judgments are the purview of the General Assembly. "It is the role of the legislature to weigh * * * competing policy concerns and make the public policy of this state; '[o]ur role, in the exercise of the judicial power granted to us by the Constitution, is to interpret the law that the General Assembly enacts.' " *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 37, quoting *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 14. There may be good reasons for the General Assembly to revise the statute to account for a warden who fails to deliver the statutory notice to the prosecutor and the court, but those reasons do not justify our assuming the legislative role.

{¶ 33} Further, in fixing what it finds to be a problem with the statute as written, the majority creates other potential problems. Under the majority's fix, the 180-day statutory time clock starts as soon as the prisoner gives notice to the warden, regardless of when—or if—that notice is received by the prosecutor and the court. *See* majority opinion at ¶ 17. In essence, prosecutors and crime victims are strictly liable for a warden's failures. The state can lose the opportunity to forever prosecute a prisoner before it learns that prosecution was requested.

{¶ 34} The United States Supreme Court noted these considerations in *Fex*, comparing the "worst case scenarios" under the competing interpretations of the IAD that were offered in that case. 507 U.S. at 49, 113 S.Ct. 1085, 122 L.Ed.2d 406. It explained that under the prisoner's interpretation, the "careless or malicious warden" could prevent commencement of the 180-day period by failing to forward the request. *Id.* at 50. This result was "bad," but the court found the worst-case scenario under the state's interpretation to be "significantly worse": "If, through

negligence of the warden, a prisoner's IAD request is delivered to the prosecutor more than 180 days after it was transmitted to the warden, the prosecution will be precluded before the prosecutor even knows it has been requested." *Id.*

{¶ 35} The point is that the positions advanced by the parties in this case involve policy tradeoffs. One might favor a rule that forces prosecutors and crime victims to bear the cost of a warden's dilatoriness, or one might favor a rule that imputes those consequences to prisoners. The United States Supreme Court opined in *Fex* that the policy outcome opted for by the majority today is "significantly worse" than the alternative of requiring actual receipt, *id.* The majority apparently disagrees.

{¶ 36} But ultimately, policy tradeoffs are not our call. The language of the statute is clear. I would leave any tweaking of its language to the General Assembly.

### *Conclusion*

{¶ 37} Because it is self-evident that one cannot cause something to be delivered unless delivery actually occurs, I would affirm the decision of the Ninth District Court of Appeals. Because the majority does otherwise, I respectfully dissent.

KENNEDY, C.J., and DETERS, J., concur in the foregoing opinion.

––––––––––––––––––––––

J.D. Tomlinson, Lorain County Prosecuting Attorney, and Lindsey C. Poprocki, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Peter Galyardt, Assistant Public Defender, for appellant.

––––––––––––––––––––––