[Cite as *State v. Smith*, 2025-Ohio-4973.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | :    C.A. No. 2025-CA-8 |
|      Appellee | : |
| | :    Trial Court Case No. 23CR00071 |
| v. | : |
| | :    (Criminal Appeal from Common Pleas |
| JASON L. SMITH | :    Court) |
| | : |
|      Appellant | :    **FINAL JUDGMENT ENTRY &** |
| | :    **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 31, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

LEWIS, J., and HUFFMAN, J., concur.

CHRIS BECK, Attorney for Appellant
JAMES D. BENNETT, Attorney for Appellee

TUCKER, J.

{¶ 1} Jason L. Smith appeals from his conviction following a jury trial on one count of failure to comply with an order or signal of a police officer, a third-degree felony.

{¶ 2} Smith contends the trial court violated his right to a speedy trial and his attorney provided ineffective assistance by failing to raise the issue.

{¶ 3} We see no speedy trial violation. While incarcerated in federal prison, Smith demanded a speedy trial but failed to comply with R.C. 2963.30, which addresses the timely disposition of an Ohio charge when a defendant is imprisoned in another jurisdiction. Absent compliance with the statute, Smith was not entitled to be tried within 180 days of his written notice demanding a speedy trial. Accordingly, the trial court's judgment is affirmed.

**I. Background**

{¶ 4} In March 2023, a grand jury indicted Smith on the above-referenced charge. At that time, he was serving a sentence in a New York federal prison. After discovering his indictment, Smith filed a pro se November 2023 letter to the trial court demanding a "fast and speedy trial." He filed several similar letters over the next few months. In July 2024, while still in federal prison, Smith was arraigned on his indictment via a teleconference. He was released from prison on January 7, 2025. Following several delays, including continuances granted at defense counsel's request, Smith's case proceeded to jury trial in March 2025. The jury found him guilty, and the trial court imposed a 24-month prison sentence. Smith appealed, advancing two assignments of error.

## II. Analysis

**{¶ 5}** The first assignment of error states:

**THE TRIAL COURT ERRED IN VIOLATING APPELLANT'S RIGHT TO A FAST AND SPEEDY TRIAL PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION, O.R.C. 2945.71, AND THE INTERSTATE AGREEMENT ON DETAINERS CODIFIED IN O.R.C. 2963.30.**

**{¶ 6}** Although Smith's assignment of error references his federal and state constitutional right to a speedy trial as well as two statutes, his substantive argument addresses only R.C. 2963.30. This statute codified the Interstate Agreement on Detainers ("IAD"), which identifies how "one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial." *Cuyler v. Adams*, 449 U.S. 433, 435 fn. 1 (1981). The IAD "establishes procedures under which a prisoner may initiate his transfer to the receiving State and procedures that ensure protection of the prisoner's speedy trial rights." *Id*. The IAD applies to the federal government and signatory states. *State v. Williams*, 2023-Ohio-3647, ¶ 13. It provides as follows regarding the prompt disposition of charges:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's*

3

*jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint*: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.*

(b) *The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court* by registered or certified mail, return receipt requested.

(Emphasis added) IAD Article III, Sections (a) and (b).

{¶ 7} Smith contends he satisfied the IAD's requirements on November 2, 2023 by "fil[ing] a request for a speedy trial accompanied by information from the Federal Bureau of Prisons and United States Department of Justice." He claims he followed up with additional letters to the trial court. Smith asserts that the trial court violated R.C. 2963.30 by failing to hold his trial within 180 days of his initial November 2, 2023 letter.

{¶ 8} Upon review, we find Smith's argument to be unpersuasive. The existence of a detainer is a threshold requirement for application of the IAD. "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking

4

the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719 (1985). Without evidence that a detainer was lodged against Smith, the IAD does not apply. *State v. Mitchell*, 2012-Ohio-2107, ¶ 15 (2d Dist.).

{¶ 9} We see no evidence of a detainer while Smith was in federal custody. The record reflects only the filing of an indictment and the issuance of a warrant for his arrest on the indictment. In *State v. Hornsby*, 2020-Ohio-1526, ¶ 13 (2d Dist.), we reasoned that neither a defendant's indictment nor his arrest warrant served as a detainer under the IAD because the indictment had not been served on the prison and neither document sought to have him held for transfer to Ohio.

{¶ 10} During his July 15, 2024 arraignment by teleconference while in federal prison, Smith did claim that a detainer existed and that it was preventing his transfer to a halfway house. The prosecutor did not challenge this claim, and the State has not argued the non-existence of a detainer on appeal. For present purposes, then, we will assume arguendo that a detainer was lodged against Smith while in federal custody.

{¶ 11} Under the remainder of Article III of the IAD, Smith was required to be tried within 180 days after "caus[ing] to be delivered" to the prosecutor and the trial court "written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." The IAD specified how Smith was to cause this delivery. His notice and request were to "be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him." In turn, the warden or another prison official then bore responsibility for forwarding to the prosecutor and the trial court Smith's notice and request along with the prison's certification of his term of commitment and other relevant information.

5

**{¶ 12}** This court and others have applied a substantial-compliance standard to issues arising under the IAD. *See, e.g.*, *State v. Holt*, 83 Ohio App.3d 676, 681 (2d Dist. 1992); *State v. Harris*, 2024-Ohio-5404, ¶17 (1st Dist.); *State v. Yeigh*, 2024-Ohio-2348, ¶ 20 (5th Dist.).[1] "In order to start the 180-day period, defendants must 'substantially comply' with the IAD's notice and request requirements." *State v. Denniss*, 2009-Ohio-3498, ¶ 19 (6th Dist.). In the context of the IAD, the substantial-compliance standard requires a defendant to have done everything that reasonably can be expected. *Id*. The issue before us is whether Smith substantially complied with Article III of the IAD by sending his November 2, 2023 letter and subsequent letters directly to the trial court. We conclude that he did not.

**{¶ 13}** Smith's letters themselves failed to make clear whether he even was invoking the IAD's 180-day trial requirement. His primary complaint was that a warrant or detainer was preventing his transfer from federal prison to a halfway house. He asked the trial court to remove the detainer or warrant. Several times he also asked the trial court to schedule a trial date for one month after his release from prison. Notably, when Smith wrote his November 2, 2023 letter, his anticipated release date remained more than a year away. We note, however, that his letters also did mention his desire for "fast & speedy trial."

**{¶ 14}** Even if Smith's cursory reference to a "speedy trial" sufficiently invoked the IAD, his failure to give his written notice and request for disposition to prison officials, as directed by the IAD, precluded application of the 180-day trial requirement. *See State v. Reece*, 2017-Ohio-222, ¶ 10 (2d Dist.) ("And nothing in the record suggests that Michigan

---

[1] In *State v. Williams*, 2023-Ohio-3647, which we address more fully below, three dissenting Ohio Supreme Court justices opined that the substantial-compliance standard no longer applies in IAD cases and suggested that strict compliance is necessary. *Id*. at ¶ 27 (DeWine, J., dissenting). For present purposes, we adhere to the substantial-compliance standard because Smith cannot meet even this reduced threshold.

prison officials received any notice from Reece. Consequently, the 180-day speedy-trial period did not apply."). Smith's direct filing with the trial court prevented prison officials from providing the prosecutor and the trial court the IAD-mandated institutional certificate stating his term of commitment and providing other pertinent information. "A defendant does not substantially comply if he sends a notice and request directly to the prosecution or appropriate court without first forwarding it to his warden in order to have the required accompanying certificate attached." *Denniss* at ¶ 19, citing *State v. York*, 66 Ohio App.3d 149, 154 (12th Dist. 1990). Smith claims his November 2, 2023 letter to the trial court "was accompanied by a form from the United States Department of Justice and the Federal Bureau of Prisons." But the record before us contains no form accompanying that letter or any of his other letters.

{¶ 15} Finally, even if Smith could have filed his IAD notice and request directly with the trial court, none of his letters indicated that he had served the prosecutor. Smith's failure to serve the prosecutor constituted an additional failure to invoke the 180-day trial right provided by the IAD. *State v. Keeble*, 2004-Ohio-3785, ¶ 10 (2d Dist.) ("It is unclear whether Keeble's March 25, 2002 application, by its terms, triggers the requirements of R.C. 2963.30. Even if it did, Keeble's failure to serve notice on the county prosecutor is probably fatal."); *State v. Cloud*, 122 Ohio App. 3d 626, 630 (2d Dist. 1997) (finding that analogous language in R.C. 2941.401, which applies to in-state prisoners with pending charges, "imposes no duty on the state to bring an accused to trial within the time provided when the notice and request are never served on the prosecutor and the court").

{¶ 16} In short, we decline to find substantial compliance with R.C. 2963.30 where Smith wrote directly to the trial court, failed to serve the prosecutor, and did not include required certification information from prison officials. We recognize that some courts have

7

found substantial compliance where a defendant sends his notice and request directly to the trial court without the necessary certification. In *State v. Moore*, 2014-Ohio-4879 (3d Dist.), for example, the Third District found substantial compliance in such a situation. The defendant in *Moore* was an Ohio prison inmate who had charges pending in another Ohio county. He filed a pro se request for a speedy trial under R.C. 2941.041, which is analogous to R.C. 2963.30, the statute applicable to out-of-state inmates. The defendant filed his request directly with the trial court and served the prosecutor. Although he did not obtain certification from prison officials, he did include a printout from the Ohio Department of Rehabilitation and Correction showing his date of incarceration, anticipated release date, and other pertinent information. *Id*. at ¶ 5. *Moore* is distinguishable from the present case. Here, Smith sent a letter to the trial court without any accompanying information of the type required by the IAD and failed to serve the prosecutor.

{¶ 17} The present case also is distinguishable from *State v. Williams*, 2023-Ohio-3647, which involved an Ohio inmate facing charges in another Ohio county. Applying R.C. 2941.041, a majority of the Ohio Supreme Court held that the defendant had caused his notice and request for disposition to be delivered to the prosecutor and the trial court, within the meaning of R.C. 2941.041, when he gave those documents to the prison warden. Although the warden never forwarded them to the prosecutor and the trial court, the four-member majority found that the defendant had done all that reasonably could be expected. Therefore, the majority found substantial compliance with the statute and determined that the 180-day clock began running when the defendant gave the warden the documents.

{¶ 18} *Williams* is not controlling in Smith's case. Unlike *Williams*, Smith did not give his notice and request to the federal prison warden and rely on the warden to forward the documents to the prosecutor and the trial court. Instead, Smith undertook that obligation

8

himself by sending his pro se letters directly to the trial court. Even if we apply the Third District's approach in *Moore* and the majority's reasoning in *Williams*, Smith did not substantially comply with the IAD because he failed to serve the prosecutor and omitted the pertinent information that certification from the prison would have provided. In other words, he did not do all that reasonably could have been expected of him.

{¶ 19} The present case differs from *Williams* in a second way as well. *Williams* arose under R.C. 2941.041, the statute applicable to Ohio prison inmates charged with committing crimes in Ohio. Smith's case arose under R.C. 2963.30, which applies to out-of-state prison inmates charged with committing crimes in Ohio. Substantively, the two statutes are nearly identical. But R.C. 2963.30 codified the IAD, an interstate compact that was approved by the U.S. Congress under the authority of the federal Constitution. Consequently, U.S. Supreme Court decisions are controlling over conflicting state-court decisions interpreting the IAD. *State v. Denkins*, 2004-Ohio-1696, ¶ 6 (1st Dist.) ("Ohio has adopted the IAD in R.C. 2963.30. . . . Because the IAD is a [c]ongressionally sanctioned interstate compact, federal law controls."); *see also Williams* at ¶ 27 (DeWine, J. dissenting) (noting that U.S. Supreme Court precedent governs issues arising under R.C. 2963.30).

{¶ 20} In *Fex v. Michigan*, 507 U.S. 43 (1993), the U.S. Supreme Court held that a prisoner's transmission of an IAD request to prison authorities did not trigger the 180-day speedy-trial clock even if through no fault of the prisoner the request was not delivered to the prosecutor and the trial court. The majority reasoned that the 180-day period did not commence until the prisoner's request in fact reached the prosecutor and the trial court. *Id*. at 47-52. *Fex* is at odds with the majority decision in *Williams*, which addressed R.C. 2941.041 and held that a prisoner's delivery to prison officials of his notice and request

9

was sufficient to trigger the 180-day clock. [2] Insofar as *Williams* and *Fex* have any applicability in Smith's case, we must follow *Fex*, which interpreted the IAD. We note too that *Fex* itself is consistent with earlier case law from this district. *See State v. Luna*, 1997 WL 630029, *2 (2d Dist. Sept. 30, 1997) ("Luna never served a notice and request for trial on those charges in the court and prosecutor in Montgomery County. Both are necessary to trigger the time requirements of the I.A.D. Even if, as Luna claims, Nebraska authorities failed to forward a notice and request that he gave them, that does not create an exception to those requirements.").

**{¶ 21}** For the foregoing reasons, the trial court did not err in failing to dismiss the charge against Smith based on a violation of the IAD's 180-day trial requirement. The first assignment of error is overruled.

**{¶ 22}** The second assignment of error states:

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

**{¶ 23}** Smith alleges ineffective assistance of counsel based on his attorney's failure to seek dismissal on speedy-trial grounds. His argument presumes entitlement to have the charge dismissed under the IAD because he was not tried within the 180 days prescribed by R.C. 2963.30.

---

[2] The dissent in *Williams* recognized this fact, explaining: "It is also worth noting that because *Fex* is controlling for IAD claims, the majority's decision today means that prisoners in Ohio will be subject to different rules depending on whether they face in-state or out-of-state charges. For out-of-state charges, *Fex* controls and the 180-day clock doesn't start ticking until the notice is received by the prosecutor and the court. *See Fex* at 52, 113 S.Ct. 1085. For in-state charges, under the majority's opinion the clock starts to tick as soon as notice is given to the warden." *Williams*, 2023-Ohio-3647, at ¶ 27, fn. 2 (DeWine, J. dissenting).

**{¶ 24}** As we explained above, Smith's letters to the trial court never triggered the 180-day clock while he was a federal inmate. Therefore, his later-appointed defense counsel did not provide ineffective assistance by failing to seek dismissal under the IAD. The second assignment of error is overruled.

### III. Conclusion

**{¶ 25}** The judgment of the Darke County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.