[Cite as *State v. Conway*, 2026-Ohio-2353.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NOS. CA2025-05-057<br>CA2025-05-058<br>CA2025-05-059 |
| vs. | : | |
| JACKIE LEE CONWAY, | : | OPINION AND<br>JUDGMENT ENTRY<br>6/22/2026 |
| Appellee. | : | |
| | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CRA 2300492

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellant.

Jackie Lee Conway, pro se.

## **O P I N I O N**

**BYRNE, P.J.**

{¶ 1}  The State of Ohio appeals from the decision of the Butler County Area III Court granting Jackie Lee Conway's three motions to dismiss three separate theft

charges.[1] For reasons outlined below, we reverse the trial court's decision and remand for further proceedings.

## I. Background of the Interstate Agreement on Detainers

{¶ 2} This case involves the application of the Interstate Agreement on Detainers ("IAD"). "[T]he IAD is a congressionally sanctioned interstate compact under the Compact Clause, Article I, Section 10, of the United States Constitution" and is subject to federal law. *State v. Black*, 2015-Ohio-513, ¶ 4, citing *Carchman v. Nash*, 473 U.S. 716, 719 (1985). Specifically, the IAD is a "compact among 48 states, the District of Columbia, and the United States that establishes procedures for one jurisdiction to obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing the prisoner to trial." *Black* at ¶ 3, citing *Cuyler v. Adams*, 449 U.S. 433, 435 (1981). The "objective of the IAD is 'to implement a defendant's right to a speedy trial and to avoid excessive interference with a prisoner's rehabilitation in the state prison system.'" *Black* at ¶ 7, quoting *United States v. Palmer*, 574 F.2d 164, 167 (3d Cir. 1978).

{¶ 3} The IAD implements this objective by regulating the use of detainers. A "detainer" is "'a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.'" *State v. Sanchez*, 2006-Ohio-4478, ¶ 19, quoting *Carchman* at 719. "The IAD outlines two procedures by which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of another state for disposition of charges pending there." *Black* at ¶ 8. "'One of these procedures may be invoked by the prisoner; the other by the prosecuting attorney of the receiving State.'" *Id.*, quoting *Cuyler* at 444. This case deals with the interpretation

---

1. In Butler County, the county court is divided into three areas of separate jurisdiction: Areas I, II, and III. *See* R.C. 1907.15.

of the prisoner-initiated procedure outlined in Article III(a)-(b) of the IAD.

## A. Overview of R.C. 2963.30, Article III

{¶ 4} In Ohio, the IAD is codified at R.C. 2963.30. *State v. Racicot*, 2019-Ohio-1191, ¶ 12 (12th Dist.). With regard to the prisoner-initiated procedure just referenced, Article III(a)-(b) of the statute provides:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any . . . complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . .

> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden . . . who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt returned.

{¶ 5} In sum, R.C. 2963.30, Article III(a) states that whenever a prisoner in one state has a detainer lodged against him in another state, he may request a final disposition in the state that has the detainer lodged against him. Article III(b) specifies the procedure for how the prisoner must deliver the request for final disposition to the necessary parties. Specifically, the request for final disposition "shall be given or sent by the prisoner to the warden . . . or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail. . ."  R.C. 2963.30, Article III(b). Article III(a) further provides that after a prisoner "shall have caused to be delivered" to the appropriate prosecuting officer and court his request for final disposition, "he shall be brought to trial within one hundred

eighty days." R.C. 2963.30, Article III(a).

{¶ 6} The Unites States Supreme Court in *Fex v. Michigan*, 507 U.S. 43, 52 (1993), analyzed the IAD statute and held that the "180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition . . . has *actually been delivered* to the court and prosecuting officer of the jurisdiction that lodged the detainer against [the prisoner]." (Emphasis added.)

{¶ 7} This appeal concerns whether Conway's final disposition request was "actually delivered" to both the Butler County Prosecutor's Office and the trial court pursuant to Ohio's IAD statute, R.C. 2963.30, Article III(a)-(b).

{¶ 8} We will return to the text of the statute and relevant caselaw in our analysis below, after addressing the facts and procedural history of this case.

## II. Factual and Procedural Background

{¶ 9} On May 1, 2023, the West Chester Police Department filed three separate complaints with the Butler County Area III Court, each charging Conway with theft by deception. The complaints allege that in late April of 2023, Conway stole products from Home Depot in West Chester on three separate occasions, under the alias of "James Baker."

{¶ 10} The case dockets indicate that nothing at all was filed in the three theft cases for more than a year, until Conway filed three pro se motions to dismiss on August 30, 2024. Sometime after the events alleged in the complaints, Conway had become an inmate at the Western Kentucky Correctional Complex ("WKCC") in Fredonia, Kentucky, for offenses unrelated to this appeal. In his motions to dismiss, Conway alleged that on February 22, 2024, while incarcerated at the WKCC, he requested final disposition of his three theft charges in Butler County pursuant to Article III of the IAD. He argued that the charges should be dismissed because more than 180 days had passed since he made

- 4 -

his alleged final disposition request, and "he ha[d] yet to be transported, tried or even informed" of the possible resolution of his detainer.

{¶ 11} Conway attached to the motions to dismiss a copy of the final disposition request that he allegedly submitted to the warden of the WKCC in February 2024. Indeed, a "Certificate of Inmate Status" attached to the motions and dated February 22, 2024, appears to contain the signature of the WKCC warden. The certificate contains language suggesting that it was issued in response to the warden's receipt of a final disposition request. Likewise, an "Order to Deliver Temporary Custody" attached to the motions to dismiss was apparently signed by the warden on February 22, 2024. That order requests that the Butler County Prosecuting Attorney inform the WKCC whether he intended to bring Conway to trial in Butler County. However, nothing in the record suggests that Conway's final disposition request or these other documents were ever delivered (or even sent) to the Butler County Prosecutor or to the trial court at all, let alone via registered or certified mail.

{¶ 12} Subsequently, on December 27, 2024, Conway filed new versions of his three pro se motions to dismiss with the trial court. He again attached the documents described above to his motions.

{¶ 13} The State argued that Conway's motions to dismiss should be denied because his final disposition request was never received by the State or the court.

{¶ 14} The trial court later issued a decision granting Conway's motions to dismiss. Referring to Conway's final disposition request as a "request for speedy trial," the court conceded that "[i]t [was] debatable whether [Conway's] request for speedy trial was ever 'delivered' to necessary parties in February of 2024" because the "original request for speedy trial was not located in any of the Court's dockets as a time-stamped entry" and "there [was] no proof of the receipt of the document in the Court's file." Nonetheless, the

court proceeded to grant the motions to dismiss, stating that it was "undeniable that [Conway's] August 2024 motion to dismiss had all necessary paperwork attached to show that the demand for speedy trial was being made." Thus, the court concluded that "when [Conway's] [final disposition] request was attached to the motion to dismiss filed on August 30, 2024, the demand for speedy trial pursuant to the IAD was reiterated." The court also stated that "[Conway] ha[d] provided proof, via a court filing in late January of 2025, that he served his demand for speedy trial by certified mail service to the Butler County Prosecutor's Office." Notably, the January 2025 filing that the court referenced—in which Conway putatively "provided proof" that he "served his demand for a speedy trial by certified mail service to the Butler County Prosecutor's Office"—appears nowhere on the court's docket.

{¶ 15} Based on its conclusion that Conway delivered his final disposition request to the trial court and to the State pursuant to the IAD on August 30, 2024 (that is, when he attached the IAD documents we have discussed to his motions to dismiss), and based on the State's failure to bring Conway to trial within 180 days from that date, the court granted Conway's motions to dismiss the three theft charges.

{¶ 16} The State of Ohio appealed and raised one assignment of error.

### III. Law and Analysis

{¶ 17} The State of Ohio's sole assignment of error states:

THE BUTLER COUNTY AREA III COURT ERRED WHEN IT
GRANTED CONWAY'S MOTION TO DISMISS.

{¶ 18} The State argues that the trial court committed reversible error when it granted Conway's motions to dismiss for two separate reasons. First, the State argues the trial court erred in granting Conway's motions to dismiss because Conway failed to actually deliver, by certified mail, his February 2024 request for final disposition to the

Butler County Prosecutor's Office and the Butler County Area III Court.[2]

{¶ 19} Second, the State argues the "trial court committed reversible error when it decided to construe the photocopies of Conway's February 2024 request for final disposition attached to his motion to dismiss as a second request." We will address the State's arguments in turn.

### A. Applicable Law and Standard of Review

{¶ 20} We apply a de novo standard of review in our analysis of a trial court's decision regarding a motion to dismiss. *State v. Hake*, 2025-Ohio-4622, ¶ 7 (12th Dist.), citing *State v. Myers*, 2019-Ohio-4914, ¶ 10 (12th Dist.). We also review a trial court's decision interpreting the IAD de novo. *State v. Anderson*, 2010-Ohio-5068, ¶ 15 (12th Dist.), citing *Riedel v. Consol. Rail Corp.*, 2010-Ohio-1926, ¶ 6. However, when a trial court makes findings of fact in its analysis under the IAD, this court "will defer to a trial court's findings of fact as long as competent, credible evidence supports them." *State v. Smith*, 2018-Ohio-5020, ¶ 21 (4th Dist.), citing *State v. Brown*, 131 Ohio App.3d 387, 391 (4th Dist.).

### 1. Analysis of R.C. 2963.30, Article III(b)

{¶ 21} Upon a de novo review, we find error in the trial court's interpretation of the statute. "While pursuant to R.C. 2963.30, Article IX, interpretation of the IAD should be liberally construed to effectuate its purposes, the IAD is . . . a federal law subject to federal construction." *State v. Hiler*, 2015-Ohio-5200, ¶ 15 (12th Dist.), citing *New York v. Hill*, 528 U.S. 110, 111 (2000). Therefore, federal law controls in interpreting the IAD. *Id.*

---

2. The State also argues that Conway did not "substantially comply" with the IAD statute in requesting for final disposition of his charges. But the "substantially comply" standard no longer is controlling law; therefore, we will not consider whether Conway "substantially complied" with the IAD statute. *See State v. Williams*, 2023-Ohio-3647, ¶ 27, citing *Fex v. Michigan*, 507 U.S. 43, 47, 52 (1993) ("But [the] substantial compliance standard was effectively overruled by the United States Supreme Court" as "*Fex* rejected any notion that a prisoner's best efforts to cause notice to be delivered would suffice, and instead, the court strictly construed the requirements of the IAD.").

{¶ 22} As stated above, the United States Supreme Court, in *Fex*, 507 U.S. 43, interpretated the IAD statute and determined that a prisoner's actual delivery of the final disposition request to the prosecuting attorney and trial court commences the 180-day time period.

{¶ 23} Writing for the Court, Justice Scalia explained that the 180-day time period commences on the "receiving State's receipt of the [final disposition] request" because the plain language of Article III(b) of the IAD "require[es] the warden to forward the prisoner's request and accompanying documents *'by registered or certified mail, return receipt requested.'*" (Emphasis added.) *Id.* at 51. Thus, the IAD requires "documentary evidence of the date on which the request is delivered to the officials of the receiving State" to commence the 180-day time period. *Id.*

{¶ 24} Here, the record does not provide any evidence establishing that Conway's request was ever delivered to either the Butler County Prosecutor's Office or the trial court in the manner required by the IAD. We therefore agree with the State's first argument that the trial court committed reversible error in granting Conway's motions to dismiss because the record does not support the conclusion that Conway's final disposition request was delivered to the necessary parties.

{¶ 25} We also agree with the State's second argument that the trial court erred in relying on the photocopies of Conway's final disposition request attached to the motions to dismiss as a basis for granting Conway's motions to dismiss. The State may have been indirectly notified of Conway's request for final disposition by Conway attaching those documents to his August 2024 motions to dismiss. But the IAD statute does not contemplate the 180-day timeline to begin when the prosecuting office has been indirectly notified through attachments to motions to dismiss. Instead, the statute states that the 180-day timeline begins when the final disposition request is *delivered*, which is when the

final disposition request is "forward[ed] . . . [by the warden] to the appropriate prosecuting official and court *by registered or certified mail.*" (Emphasis added.) R.C. 2963.30, Article III(b). Here, there is no evidence in the record that this was done; the trial court and the Butler County Prosecutor's office never received Conway's final disposition request via registered or certified mail. Therefore, the State was never properly notified of Conway's final disposition request, and thus, the trial court erred in granting Conway's motions to dismiss, as the 180-day time clock never commenced.

{¶ 26} We also note that it was improper for the trial court to rely on Conway's "January 2025 filing" in reaching its decision, as this filing was not in the record. "'[I]t [is] impermissible for the trial court to consider evidence outside the record and conduct its own investigation of the facts.'" *State v. Rankin*, 2024-Ohio-4565, ¶ 14 (9th Dist.), quoting *State v. Bayliff*, 2010-Ohio-3944, ¶ 27 (3d. Dist.). Therefore, the trial court erred in relying on evidence outside of its record.

{¶ 27} Moreover, the trial court's reliance on R.C. 2941.401 in reaching its decision was misguided, as R.C. 2941.401 pertains to prisoners who are imprisoned in Ohio, rather than in a different state. *See State v. Williams*, 2023-Ohio-3647, ¶ 13 ("The IAD and R.C. 2941.401 contain similar language, but the IAD applies to prisoners who are incarcerated in one state or in a federal prison but are accused of having committed crimes in another state, whereas R.C. 2941.401 applies to prisoners who are accused of having committed crimes in Ohio and are held in Ohio state prisons.").

{¶ 28} Accordingly, for the reasons stated above, the trial court erred in granting Conway's motions to dismiss. We sustain the State's sole assignment of error.

{¶ 29} Judgment reversed and remanded.

M. POWELL and SIEBERT, JJ., concur.

## <u>J U D G M E N T   E N T R Y</u>

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded.

It is further ordered that a mandate be sent to the Butler County Area III Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*